1  MATTHEW S. PAPPAS (CSBN: 171860)
   8414 Farm Road, Suite 180
2  Las Vegas, NV 89131
3  Phone: (714) 576-9200
   E-Mail: maspalaw@mpappaslaw.com
4
   Attorney for Plaintiffs

FILED ___ LODGED
___ RECEIVED ___ COPY
SEP 2 4 2025
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

ARIZONA INTEGRATED TELEPSYCIATRY AND TELEMEDICINE SERVICES, LLC, an Arizona limited liability company; and JOHN KAMAU, an individual,

Plaintiffs,

v.

ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM (AHCCCS); KRISTEN CHALLACOMBE, in her official capacity as Interim Director of AHCCCS; VANESSA TEMPLEMAN, in her capacity as Inspector General of AHCCCS; JULIE CULTON, in her capacity as Deputy Inspector General of AHCCCS; and DOES 1–100,

Defendants.

No.: 2:25-CV-01525-JJT

FIRST AMENDED COMPLAINT FOR RETALIATION UNDER THE FEDERAL FALSE CLAIM ACT; VIOLATION OF 42 U.S.C. § 1983; VIOLATION OF FEDERAL DISABILITY DISCRIMINATION LAWS; AND INJUNCTIVE RELIEF

//
//
//

FIRST AMENDED COMPLAINT

2

## PARTIES

1. Plaintiff ARIZONA INTEGRATED TELEPSYCHIATRY AND TELEMEDICINE SERVICES, LLC (AZITTS) is an Arizona limited liability company based in Mesa, Arizona. Since 2018, AZITTS has been approved as a provider of Medicaid services in the state of Arizona.

2. Plaintiff JOHN KAMAU is an individual, resident of Arizona and principal of AZITTS.

3. Defendant ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM (AHCCCS) is a government entity responsible for managing, maintaining, and providing federal Medicaid funds and related services to recipients and providers of those services in Arizona.

4. Defendant Kristen Challacombe is the Interim Director of AHCCCS and is sued in her official capacity.

5. Defendant Vanessa Templeman is AHCCCS's Inspector General and is sued in her official capacity.

6. Defendant Julie Culton is AHCCCS's Deputy Inspector General and is sued in her official capacity.

7. Plaintiffs do not know the true names and capacities of the defendants sued as DOES 1 through 100 and will amend this complaint when such information is ascertained.

8. Plaintiffs are informed and believe and based on such information and belief allege that the defendants sued as DOES 1 through 100 are in some manner legally responsible and liable for the damages caused to and suffered by Plaintiff as set forth in this complaint.

## JURISDICTION AND VENUE

9. The gravamen of this action is violation of provisions of the federal False Claim Act (FCA), federal disability law, and the federal Civil Rights Act of 1871. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343 over claims

arising under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), the Rehabilitation Act (§ 504), and the Affordable Care Act § 1557. Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Arizona and Defendants reside or operate here.

11. AHCCCS is a state agency. Plaintiffs seek prospective injunctive and declaratory relief against the Interim Director and other appropriate officers in their official capacities under *Ex parte Young*, 209 U.S. 123 (1908).

12. Plaintiffs bring claims under Title II of the ADA, Section 504 of the Rehabilitation Act, and Section 1557 of the Affordable Care Act because Defendants' policies and practices in suspending and excluding Plaintiff AZITTS from AHCCCS participation have had the effect of denying individuals with disabilities access to behavioral health and addiction treatment services. Although Plaintiff AZITTS is not a disabled person, it has standing to assert these claims because Defendants' discriminatory actions targeted it in its capacity as a provider of services to individuals with disabilities and because such actions were taken by reason of its association with and advocacy on behalf of persons with disabilities. Courts have long recognized that health care providers and caregivers may assert ADA and Rehabilitation Act claims when government conduct aimed at them has the purpose or effect of depriving disabled individuals of equal access to public services. See, *e.g.*, *MX Group, Inc. v. City of Covington*, 293 F.3d 326 (6th Cir. 2002). AZITTS patient JERICA MINER is among many patients discriminated against by AHCCCS through its policies, procedures and practices that were and are targeted at behavioral health providers.

## FACTS COMMON TO ALL CAUSES OF ACTION

13. Arizona Integrated Telepsychiatry and Telemedicine Services (AZITTS) began operations in 2018 and was founded by John Kamau and his wife, Medina. AZITTS, located in Mesa, Arizona, provides essential psychiatric telemedicine services

to many patients. John and Medina, both originally from Kenya, manage the company, with Medina serving as the medical director and John handling the business operations.

14. Shortly after starting the business, John Kamau was approached by L&L Investments (the "Nevada group"), a healthcare investment group seeking to expand into Arizona. L&L Investments, which operated residential treatment facilities, expressed interest in investing in AZITTS and also sought to lease space for its own residential treatment facility. Although no investment materialized, the Nevada group did proceed with leasing space in the same building as AZITTS.

15. After leasing space to L&L, Mr. Kamau became suspicious of the Nevada group after noticing irregularities in their practices. Concerned, he reported his suspicions to the FBI, where he was connected with agents from the Arizona Health Care Cost Containment System (AHCCCS), the state's Medicaid agency. Despite providing detailed information, the AHCCCS agents informed Mr. Kamau in mid-2019 that no fraud had been found and that the investigation was not ongoing.

16. Around the same time, Mr. Kamau met Dale Henson, who claimed to be a professional medical biller. Thereafter, AZITTS contracted with Dale Henson to help with medical billing. When Mr. Kamau began suspecting Medicaid billing fraud by the Nevada group, he discussed the issue with Henson. Over time, Mr. Kamau discovered that Henson had been engaging in suspicious billing activities, including commingling claims from AZITTS with those of other entities, including L&L. Mr. Kamau promptly reported these findings to the FBI, who advised him to maintain contact with the providers and continue gathering evidence of the suspected fraud.

17. By 2020, after months of investigation, the FBI arranged a meeting with the Arizona Attorney General's office to discuss the ongoing fraud. Despite Mr. Kamau's repeated reports of fraudulent activities since 2019, AHCCCS personnel took no action to investigate or halt the ongoing theft of taxpayer money by entities submitting false claims.

18. In May 2020, instead of investigating the suspected fraud, AHCCCS agents took drastic and unexpected actions. At a meeting at the AHCCCS headquarters in Phoenix, agents, armed and dressed in military-like gear, detained Mr. Kamau for several hours, questioning him as though AZITTS were a criminal organization. They confiscated his laptop and phone. Then, in October 2020, a large-scale raid was conducted on the AZITTS medical facility in Mesa, with agents seizing computers, papers, and other vital equipment.

19. In a January 2021 meeting with AHCCCS personnel, FBI agents, and the company's attorney at the time, Robert Jarvis, Mr. Kamau was informed that AZITTS had not been found to be involved in fraudulent activities. The AHCCCS agent, Miller, requested Mr. Kamau's assistance in investigating fraud and abuse by entities, including L&L Investments. Despite Mr. Kamau's ongoing efforts to report fraud, it wasn't until years later that any action was taken by which time billions of taxpayer dollars had been stolen.

20. Amid the ongoing investigation by private law firms into the fraud and the mishandling of the case by AHCCCS, Mr. Kamau was approached about a potential class action lawsuit against the agency. This occurred after several appointees within AHCCCS were elevated by Governor Katie Hobbs, including but not limited to Carmen Heredia and Vanessa Templeman. As public awareness grew regarding the fraud and misconduct within AHCCCS, the agency suddenly stopped paying valid claims submitted by AZITTS in September 2023. By the time the Brewer law firm filed its class action lawsuit in December 2024, AZITTS had laid off most of its employees and was months behind in financial obligations. It soon became clear that John Kamau was the whistleblower referenced in the case.

21. Had AHCCCS employees acted competently in 2019, recognizing that taxpayer money was being stolen, billions of dollars could have been saved. Instead, the agency's incompetence and potential collusion resulted in billions of dollars lost. Meanwhile, Vanessa Templeman, the AHCCCS investigator responsible for mishandling

the fraud investigation in 2020, was promoted by Governor Hobbs to the role of Inspector General of AHCCCS. At least one other AHCCCS agent who dismissed Mr. Kamau's reports in 2019 was also promoted.

22. While similarly targeted entities (providers in the behavioral health area) went through a process of suspension and exclusion related to what was deemed credible allegations of fraud, albeit even when it had been proven there was no fraud, there has been no process followed in respect to AZITTS. Indeed, only an arbitrary, capricious and unconstitutional process targeted solely at behavioral health related providers has been in use by AHCCCS since mid-2023. Any administrative process deemed "a process" has not been used with respect to AZITTS and instead AZITTS is being treated as a "class of one" by AHCCCS in the systematic denial of claim payments. Furthermore, John and Medina are both black and are informed and believe, and based upon such information and belief allege, that AHCCCS has either intentionally or through a disparate impact process targeted providers owned, run or managed by minorities.

23. It has been two (2) years since AZITTS has been paid on many claims. There has been no administrative process provided by AHCCCS. This period of time is excessive under 42 C.F.R. § 455.23, which has not even been cited by AHCCCS. On information and belief, AZITTS alleges the delays and non-payment are retaliatory. Indefinite suspensions of payment without credible evidence and without adequate notice or hearing violate the Constitution. See *Alexandre v. Illinois Dept. of Healthcare & Family Services*, No. 19-cv-8149, 2021 WL 4192076 (N.D. Ill. Sept. 15, 2021), *Maynard v. Bonta*, 2003 U.S. Dist. LEXIS 16201 (C.D. Cal. Aug. 29, 2003.

24. JERICA MINER is a patient of AZITTS who suffers from disabilities. She is a qualified disabled individual for purposes of Title 2 of the ADA, section 504 of the Rehabilitation Act and section 1557 of the Affordable Care Act. MINER received vital health care services from AZITTS and is a recipient of AHCCCS administered state Medicaid benefits. For several years, MINER's recovery was tied to care provided by

AZITTS. As a result of the arbitrary and capricious actions of AHCCCS, MINER has effectively been denied access to her chosen health care provider and health services.

## FIRST CLAIM FOR RELIEF
## FEDERAL FALSE CLAIMS ACT

25. Plaintiffs hereby re-allege and incorporate paragraphs 1 through 24 of this Complaint.

26. The FCA prohibits retaliation against an entity or individual who reports violation of its provisions.

27. AHCCCS, as the Arizona Medicaid program provider that receives, manages and distributes federal Medicaid money, is subject to the provisions of the False Claim Act, including the provisions protecting whistleblowers.

28. Under the FCA, Kamau is entitled to recover damages for emotional distress, reputational harm, and loss of income due to AHCCCS' retaliatory conduct. The retaliatory actions caused AZITTS and Kamau significant harm, including damage to their professional reputation, financial harm to the business, and emotional distress.

29. The actions taken by AHCCCS, including but not limited to the ongoing withholding of claim payments to AZITTS, violate the provisions of the FCA and have led to substantial pecuniary damages and losses in an amount to be proven at time of trial.

## SECOND CLAIM FOR RELIEF
## 42 U.S.C. § 1983 (PROC. DUE PROCESS)

30. Plaintiffs hereby re-allege and incorporate paragraphs 1 through 29 of this Complaint.

31. By withholding money due to AZITTS and failing to provide a valid process that is not arbitrary, capricious and targeted at a "class of one" through which AZITTS could take action for recovery of the money due and payable to it, the defendants have denied AZITTS's procedural due process rights of the Fourteenth Amendment to the United States Constitution.

32. After promptly reporting fraud to AHCCCS in 2019 and cooperating with

the FBI and AHCCCS, instead of paying AZITTS for valid claims, AHCCCS is now claiming it is owed an offset for the time when AZITTS accepted payments at the behest of agents investigating Henson and the Nevada Group. By withholding payment, in-part based on AZITTS's cooperation with it at the time fraud was reported by Kamau, AHCCCS, a state actor, is summarily punishing AZITTS and Kamau without due process.

33. In or around August 2023, after public outcry about fraud and issues in the agency, AHCCCS began targeting behavioral health providers, including AZITTS. At the time this targeting began, AHCCCS put in place an arbitrary and capricious "administrative" review process and has referenced that process improperly to deny all of the claims submitted by AZITTS and other providers. The process is improper, does not provide due process, does not provide an adequate hearing system, was not approved. Moreover, it was not followed in respect to AZITTS and indeed targeted at AZITTS in a "one off" manner.

## THIRD CLAIM FOR RELIEF
## 42 U.S.C. § 1983 (SUB. DUE PROCESS)

34. Plaintiffs hereby re-allege and incorporate paragraphs 1 through 33 of this Complaint.

35. By withholding money due to AZITTS and requiring AZITTS to continue to provide services without payment, the defendants have denied AZITTS's substantive due process rights of the Fourteenth Amendment to the United States Constitution. Indeed, AHCCCS's "process" is so arbitrary and capricious that it "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

36. Plaintiffs are informed and believe and based upon such information and belief allege that AHCCCS disproportionately applied suspensions to behavioral health and Native American-serving providers, while leaving other sectors untouched in a discriminatory and irrational manner. There was no rational basis for this selective enforcement.

## FOURTH CLAIM FOR RELIEF

## 42 U.S.C. § 1983 (EQUAL PROTECTION)

37. Plaintiffs hereby re-allege and incorporate paragraphs 1 through 36 of this Complaint.

38. AHCCCS's selective targeting of behavioral health providers for heightened fraud scrutiny and then AZITTS and Kamau based on race violates the equal protection rights of AZITTS and Kamau.

## FIFTH CLAIM FOR RELIEF

## TITLE 2, ADA (42 U.S.C. §12132)

39. Plaintiffs hereby re-allege and incorporate paragraphs 1 through 38 of this Complaint.

40. AHCCCS is a public entity subject to Title II. Its policies and practices as described in this complaint denied meaningful access to services for members with disabilities by cutting off care and disrupting continuity. As a provider, Plaintiffs advocated and provided care for protected disabled individuals.

41. AHCCCS failed to make reasonable modifications to processes, resulting in discriminatory impacts on disabled members reliant on behavioral health services.

42. AHCCCS retaliated and discriminated against Plaintiffs in light of Plaintiffs' reporting of fraud in and after 2019 resulting in denial of health care services to disabled individuals including but not limited to JERICA MINER.

## SIXTH CLAIM FOR RELIEF

## SECTION 504, REHABILITATION ACT (29 U.S.C. §794)

43. Plaintiffs hereby re-allege and incorporate paragraphs 1 through 42 of this Complaint.

44. AHCCCS receives federal financial assistance and discriminated against individuals with disabilities by arbitrarily and improperly cutting payments to AZITTS off for more than two years. Accordingly, AHCCCS has denied individuals with disabilities participation and benefits of the AHCCCS program.

## SEVENTH CLAIM FOR RELIEF

### AFFORDABLE CARE ACT §1557 (29 U.S.C. §18116)

45. Plaintiffs hereby re-allege and incorporate paragraphs 1 through 44 of this Complaint.

46. AHCCCS, as a federally funded health program, discriminated on the basis of disability by policies and practices that disproportionately burdened behavioral health recipients and cut off medically necessary care.

## EIGHTH CLAIM FOR RELIEF

### DECLARATORY RELIEF (28 U.S.C. §§ 2201–2202)

47. Plaintiffs hereby re-allege and incorporate paragraphs 1 through 46 of this Complaint.

48. An actual, justiciable controversy exists regarding the lawfulness of Plaintiffs' being denied payments on claims for over two years after those payments suddenly stopped, without notice, in August 2023, and the constitutionality of retaliatory actions taken against AZITTS and John Kamau.

49. Plaintiffs seek a declaration that Defendants' actions are unlawful and unconstitutional, and that Plaintiffs are entitled to reinstatement and an order requiring prospective claim payments to be made. Plaintiffs further seek a declaration that the two year period for which claims have gone unpaid is unreasonable and effectively denies Plaintiff AZITTS procedural due process.

## NINTH CLAIM FOR RELIEF

### INJUNCTIVE RELIEF

50. Plaintiffs hereby re-allege and incorporate paragraphs 1 through 49 of this Complaint.

51. The actions of the defendants have stopped AZITTS's ability to provide for seriously ill and disabled patients, including but not limited to JERICA MINER, who have suffered loss of treatment services, injuries and/or death as a result of the actions of AHCCCS and constitute irreparable harm. Furthermore, the constitutional violations

complained of by plaintiffs constitute irreparable harm.

52. AZITTS has a substantial likelihood of prevailing on the merits in this case.

53. There will be little or no hardship on AHCCCS should it be ordered to commence appropriate administrative action with respect to past claims it has not paid to AZITTS. Moreover, it will suffer little or no hardship should it be ordered ordered to timely pay ongoing valid claims submitted by AZITTS.

54. AZITTS will continue to be unable to provide services to patients in need leading to further irreparable harm to those patients while payments are not being made but while AHCCCS requires AZITTS to continue providing services. It has had to layoff many employees including care providers. AHCCCS has made no allegations of fraud, "credible" fraud or followed any process since it arbitrarily and capriciously stopped paying AZITTS in or around August 2023. The actions taken by AHCCCS violate rights of the patients under Title 2 of the Americans with Disabilities Act by depriving the patients of public services based on their disabilities that involve a need for rehabilitation and behavioral health services. While the actions of AHCCCS may not be facially discriminatory and targeted at the patients, the actions have a significant disparate impact on those patients. Accordingly, the balance of hardships weighs significantly in favor of granting injunctive relief.

55. For all of the foregoing reasons, an injunction requiring AHCCCS to make prospective payment for the valid claims submitted to it by AZITTS should issue. Furthermore, a prohibitory injunction stopping AHCCCS from further arbitrary and capricious actions against behavioral health providers should issue.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For injunctive relief as set forth in this Complaint;
2. For declaratory relief as requested in this Complaint;
3. For attorneys' fees incurred in this action;

4. For general and special damages for the retaliation, ADA, section 504 and ACA claims for relief;

5. For an award of costs incurred in this action; and

6. For such other and further relief the Court deems appropriate.

DATED: 9/22/2025

*[signature]*

MATTHEW PAPPAS (CSBN: 171860)
Attorney for Plaintiffs
*Pro hac vice*